IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHESTER BROWN,<br><br>    Petitioner,<br><br>  v.<br><br>KATHY PROSPER, Warden,<br><br>    Respondent.<br>_____/ | No. C 09-04870 SBA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

## **INTRODUCTION**

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus. Respondent has filed an answer to the petition. Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

## **BACKGROUND**

**I.**   **Case History**

An Alameda County jury convicted Petitioner of two counts of first degree burglary and three counts of receiving stolen property. People v. Brown, No. A116120, 2007 WL 4533528 at *1. The California Court of Appeal affirmed, and the California Supreme Court denied a petition for review.

The instant petition was filed on October 13, 2009. On March 8, 2010, the Court issued an Order to Show Cause why the writ should not be granted. On July 23, 2010, Respondent filed an

answer as well as a memorandum of points and authorities, and lodged the record with the Court. On August 20, 2010, Petitioner filed a traverse.

## II.  Statement of Facts

The following facts are taken from the opinion of the California Court of Appeal:

> The charged offenses arose from a series of home intrusions and vehicle entries committed by defendant in the same Pleasanton neighborhood early in the morning of March 18, 2006. We take judicial notice that March 18, 2006 was a Saturday.
>
> *Count 6-Burglary of the Martell Home*
> The Martells lived on a cul-de-sac at 9188 Longview Drive. Their house is at the end of a steep, 100-yard driveway. Mrs. Martell testified that the family kept a chainsaw, gardening equipment, bicycles, skateboards, a generator, a trunk, and Mr. Martell's search-and-rescue equipment in their garage. The garage door was probably left open.
>
> Julie Bishop was the Martells' next door neighbor, and lived at 9146 Longview Drive. At approximately 6:45 a.m. on March 18, just after daylight, Bishop heard a car drive up the Martell's driveway and heard dogs barking. Looking out her bedroom window, which was about 40 feet from the Martells' garage, Bishop saw a person get out of an older model silver or grey Buick parked in the Martell's driveway. The person was wearing a long black jacket with a hood.
>
> The person entered the Martells' garage. After about five minutes in the garage, the person emerged, walked over to a pickup truck parked in the driveway, and looked in the window. Bishop could now see that the person was a black male. Bishop did not see the man take anything from the garage. The man got back into his car, backed down the driveway, and drove onto Longview Drive.
>
> Bishop could not identify defendant in court as the burglar, but did testify that defendant was a stranger to her. Mrs. Martell testified she had not noticed that anything was missing from the garage. Mrs. Martell testified that defendant was a stranger to her also.
>
> *Count 1-Burglary of the Cameron Home*
> Bishop continued to watch the Buick as it drove onto Longview drive and briefly stopped in front of her house. She saw the Buick enter the driveway of her next door neighbor, Clay Cameron, who lived at 9104 Longview [D]rive. The Buick backed into the Cameron driveway so that its front was pointed downhill.
>
> Bishop called Clay Cameron at 6:55 a.m. Cameron was awakened by the call, but did not get to the phone in time to pick it up. He went into his third floor bathroom and heard someone in the second floor hallway. Cameron lived on the third floor. The first and second floors of the Cameron home were a bed and breakfast. There were no guests at the time, but the main entrance was not locked.
>
> Cameron called out, "Who's there?" A male replied, "I'm looking for somebody in the old folks' home." Cameron told him to "get out." The man said he'd made a mistake and Cameron heard footsteps in the second floor hallway.

Cameron went to the window, looked down, and saw defendant standing in front of the garage door. Defendant was wearing a dark, full-length leather jacket. It was daylight and Cameron had a clear view of defendant. Cameron positively identified defendant in court. Defendant was a stranger to Cameron.

Defendant drove off. The Bishops called the police and reported the burglary. They gave the police a description of defendant, his clothing, and his car, as well as the car's license number.

Pleasanton Police Officer Mike Murazzo responded to the Bishops' call, and stopped defendant's Buick at 7:05 a.m. on Longview Drive near the intersection with Foothill Drive. Murazzo positively identified defendant in court. When he was stopped, defendant was wearing a long black leather jacket with a pair of scissors protruding from a pocket. Defendant's pockets also contained vice-grip pliers and two screwdrivers. On the front seat of defendant's car were "ninja rocks," broken pieces of spark plug porcelain used by auto burglars to break car windows with a minimum amount of noise.

Officer Murazzo found two wallets under the front seat. One contained identification for Richard Heidebrecht. Elsewhere in the passenger compartment, Murazzo found three cell phones, a watch, a bag of coins, a money clip, and jewelry. Murazzo found a briefcase containing a laptop computer in the trunk.

Cameron was brought to the scene and made an in-field identification of defendant as the man he saw standing in front of his garage. Cameron eventually recognized the watch found in defendant's car as an old Bulova Accutron his father gave him, which he had kept in a desk drawer in his second floor office.

*Count 4-Receiving Stolen Property of Emmons*

John Emmons lived at 9044 Longview Drive. He left his Jeep Cherokee unlocked in his driveway on the night of March 17, 2006. Around 6:30 a.m. on March 18, one of his dogs started barking. Emmons looked out a window, but saw no one because it was still dark. He left at approximately 7:00 or 7:30 a.m. to play in a golf tournament. He drove past the site where the police had stopped defendant's car. When he arrived at the golf course, he discovered that his cell phone was missing. He drove back to the site of defendant's stopped Buick and identified one of the cell phones found in the car as his. He also identified the money clip as similar to one he kept in his car that had gone missing. Defendant was a stranger to Emmons.

*Count 5-Receiving Stolen Property of Gragg*

Charles Gragg lived at 5029 Forest Hill Drive, which was accessible from Foothill Drive and close to the Longview neighborhood. He left his locked GMC Yukon in his driveway on the night of March 17, 2006. Early the next morning, around 5:00 a.m., he heard his dog barking. At approximately 8:00 a.m., Gragg's daughter discovered that a window of the Yukon had been shattered. Gragg's briefcase and laptop were missing, but were later returned to him by the Pleasanton police. Defendant admits that Gragg's briefcase and laptop were recovered from the trunk of his car. Defendant was a stranger to Gragg.

*Count 3-Receiving Stolen Property of Heidebrecht*

Richard Heidebrecht lived at 640 Happy Valley Road, also accessible from Foothill Drive. He parked his unlocked GMC Denali in front of his garage on the night of March 17, 2006. He left his wallet on the central console. At approximately 7:30 a.m. on March 18, the police called him and asked if his wallet was missing. The wallet was indeed missing from the Denali but, as we noted above, had been found in

>   defendant's Buick. Defendant was a stranger to Heidebrecht.
>
>   Defendant was charged with the first degree burglary of the Cameron home (count 1); the second degree burglary of Gragg's Yukon (count 2); receiving stolen property belonging to Heidebrecht (count 3), Emmons (count 4), and Gragg (count 5); and the first degree burglary of the Martell home (count 6). Defendant did not present a defense. The jury acquitted defendant on count 2, but convicted him on the remaining five counts.

Brown, 2007 WL 4533528 at *1-3.

# **DISCUSSION**

## **I.     Standard of Review for State Court Decisions**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

### **A.     Section 2254(d)(1)**

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent

4

meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

### 1. **Clearly Established Federal Law**

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "[Section] 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000).

### 2. **"Contrary To"**

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

6

Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

### B. Sections 2254(d)(2), 2254(e)(1)

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor, 366 F.3d at 999-1000. In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1). Id. According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard

of section 2254(d)(2)." Taylor, 366 F.3d at 1000.

When there is no reasoned opinion from the highest state court to consider the Petitioner's claim, the Court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). Here, the California Court of Appeal was the highest state court to issue an explained opinion on Petitioner's claim.

## II.     Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987). Respondent concedes that Petitioner has exhausted his claims. The Court, therefore, considers Petitioner's claim on the merits.

## III.    Legal Claims

Petitioner contends that: (1) there was insufficient evidence to support his conviction on count six, the Martell burglary; (2) trial counsel was ineffective; (3) his appellate counsel was ineffective in not raising claim three; and (4) the trial court violated his due process rights when it denied his motion for substitute counsel.

### A.     Sufficiency of the Evidence

Petitioner contends that there was not sufficient evidence on the intent element of count six, the burglary of the Martell home.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, id. at 324. The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution,

8

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. Id. at 324.

When considering a sufficiency of the evidence claim the Court must "view[] the evidence in the light most favorable to the prosecution," Jackson, 443 U.S. at 319, so must assume that the jury believed the witnesses.

This claim was raised on direct appeal and rejected by the court of appeal as follows:

> Defendant contends there is insufficient evidence to support his conviction on count 6. He admits that he entered the Martell garage, but claims he lacked intent to steal anything because he did not take any property from the garage. As we noted at the outset, the failure to find suitable loot after entering a structure does not necessarily negate an intent to steal formed on entry.
>
> The standard of review of the sufficiency of the evidence to support a conviction is well known. (See People v. Mincey (1992) 2 Cal. 4th 408, 432.) The sole function of the appellate court is to consider the evidence in the light most favorable to the judgment, presume in support of the judgment every fact that can be reasonably deduced from the evidence, and "determine ... whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt." (Ibid.; see People v. Jones (1990) 51 Cal. 3d 294, 314.) The evidence must be "reasonable, credible, and of solid value." (People v. Johnson (1980) 26 Cal. 3d 557, 578.)
>
> Defendant's intent to steal when he entered the Martell garage was readily inferred by the jury from the facts and the surrounding circumstances shown by the evidence. (People v. Cain (1995) 10 Cal. 4th 1, 47; see People v. Guerra (2006) 37 Cal. 4th 1067, 1130.) During a brief period of time, early on a Saturday morning, when most people would still be asleep, defendant entered two homes and three vehicles, stealing property from all but the Martell home. His intent to steal from the Martell home can be inferred from the pattern of events, i.e., his near contemporaneous entries into nearby homes and vehicles for the purpose of taking property. The recent commission of a similar crime is circumstantial evidence of intent to steal. (See People v. Yeoman (2003) 31 Cal. 4th 93, 128.)
>
> Defendant was a stranger to the neighborhood and had no apparent lawful business there. He went from house to house stealing jewelry, wallets, cell phones, and a laptop computer-all items easily carried and converted to cash. He presumably took nothing from the Martells because he found no items that fit his requirements. We do not know why he did not take anything from the Martell garage, but he was a thief on a mission that morning. His loot included small items, including a briefcase, and perhaps defendant felt the Martell target did not include any items that he was after.
> It strains credulity to suppose that defendant failed to form an intent to steal from the Martell home when he was engaged in a pattern of entries into the homes and cars of the Martells' neighbors to take property before and after the Martell entry. We doubt that after taking property from the Emmons, Gragg, and Heidebrecht vehicles, defendant was stricken by a brief period of honesty when he walked into the Martells' open garage, shook it off, and then reverted to burglarious intent only

9

minutes later as he entered the Cameron home and stole a watch. A jury with strong circumstantial evidence found to the contrary.

There is sufficient evidence to support the conviction on count 6.

Brown, 2007 WL 4533528 at *3-4.

As the court of appeal pointed out, Petitioner entered two dwellings and three cars in a short period of time and stole from all the cars and one of the dwellings. He did not know the Martells, but nevertheless parked in their driveway early on a Saturday morning, when any occupants likely would be asleep, and entered their garage. Admittedly he apparently took nothing, but his intent in entering the garage was unmistakable. There was sufficient evidence of intent. This claim is without merit.

### B. Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel was ineffective in not (1) filing pretrial discovery motions; (2) objecting to the chain of custody of a stolen watch; (3) investigating potential witnesses; and (4) challenging the show-up identification procedure.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970). And, in Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth the standard, a two-pronged test, for evaluating claims for ineffective assistance of counsel. First, petitioner must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, id. at 687–88, "not whether it deviated from best practices or most common custom," Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citing Strickland, 466 U.S. at 690). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Id. at 787 (quoting Strickland, 466 U.S. at 689). Judicial scrutiny of counsel's performance must be highly deferential: "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id. (quoting Strickland, 466 U.S. at 689). When considering an ineffective assistance claim in a habeas case,

10

federal courts must apply a "doubly" deferential standard. See Cullen v. Pinholster, 131 S. Ct. 1388, 1410-11 (2011); Harrington v. Richter, 131 S. Ct. at 788 (same); Premo v. Moore, 131 S. Ct. 733, 740 (2011) (same). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 788.

If a petitioner cannot establish that defense counsel's performance was deficient, it is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test. See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

Strickland's second prong requires a showing "that counsel's errors were so serious as to deprive [petitioner] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice under Strickland, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694-95.

### 1. Pretrial Motions

Petitioner contends that counsel failed to "file basic discovery motions to include that [w]hen [sic] it was time for trial, and time for the production of the physical evidence to be presented to the defense, trial counsel failed to object and request for discovery of the evidence." (Pet., attached "Grounds for Relief" at (unnumbered) 2.) He provides no further information regarding this sub-claim. This is entirely insufficient to "'state facts that point to a "real possibility of constitutional error."'" Rule 4 Advisory Committee Notes (quoting Aubut v. Maine, 431 F.2d 688, 689 (1st Cir. 1970)). The claim is denied for failure to state a ground for habeas relief.

Alternatively, the Court will treat the claim as an attempt to raise the point that Petitioner mentioned at the hearing on his second Marsden[1] motion in trial court. At the hearing, Petitioner said that "I asked Mr. Van Oosting to file a few motions before this trial even started and he never

---

[1] "So named after People v. Marsden, 2 Cal. 3d 118 (1970), it is a motion permitting a defendant to articulate why he is dissatisfied with his court-appointed counsel and why counsel should be relieved." McNeely v. Blanas, 336 F.3d 822, 825 n. 3 (9th Cir. 2003).

11

did it. He was supposed to go get evidence to help me in my case and he never did it." Ex. B at 118. Counsel responded that "I made all the motions that I believe are appropriate and have legal foundation," and that "I've also made motions that I think have no legal foundation, but in an excess of caution for Mr. Brown, I wanted to bring them to the court's attention." (Ex. B at 120-22; see Ex. G (ruling on Petitioner's motions).) The above is the entire record on this claim.

"Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398. Petitioner does not identify what motions he thought should have been filed or why they would have been granted; as such, there is no showing on this record of deficient performance or prejudice. This claim is rejected.

### 2. Chain of Custody of Watch

Petitioner contends that counsel was ineffective in failing to object to a break in the chain of custody of victim Cameron's watch. On this record, however, it appears that Respondent is correct that the watch was not admitted into evidence. (Ex. D at 304 (witness did not have watch with him in court).) A chain of custody objection therefore warranted. This claim is without merit for that reason.

Alternatively, it may be that Petitioner is attempting to contend that counsel should have done more with the fact that the police evidently returned the watch to Cameron, and the fact that Petitioner contends it was in fact his own watch. Counsel, however, engaged in extensive and probing cross-examination. (See Ex. RT 288, 296-98, 302-04, 308.) Petitioner has failed to establish that counsel's representation was deficient on this point.

### 3. Failure to Investigate

Petitioner contends that counsel was ineffective in that he failed to investigate potential witnesses. He claims:

> Trial counsel also failed to investigate the available witnesses to the charges though Petitioner offered trial counsel names of witnesses who would have provided a statement and declaration indicating that the alleged watch was the personal property of Petitioner. The witness who would have provided counsel with this proffered evidence also obtained numerous photographs depicting Petitioner and his wife possessing the watch in question.

(Pet., attached "Grounds for Relief" at (unnumbered) 3.)

12

As an initial matter, Petitioner fails to supply the name of the witness or witnesses who he alleges that counsel should have interviewed, nor does he provide declarations from any witness setting out what information he or she might have been able to provide. He thus has failed to carry his burden to show that counsel's performance was deficient and that he was prejudiced. This part of the claim is without merit.

Petitioner also claims in his petition that "[a]dditionally, Petitioner provided trial counsel with information that [h]e spoke with Mr. Bishop personally with regards to what he observed along with also speaking with Mrs. Cameron. However, trial counsel refused to conduct an immediate investigation and inquiry as to what these witnesses observed. As a result, the prosecution was permitted to introduce perjured testimony regarding ownership of the watch." (Pet., attached "Grounds for Relief" at (unnumbered) 4.) Although Petitioner implies that the witnesses who should have been interviewed were Mr. Bishop and Mrs. Cameron, he provides no evidence what they would have said nor does he explain why it would have mattered. He has failed to show deficient performance or prejudice as to this part of the claim.

### 4.     Identification Procedure

Petitioner contends that counsel was ineffective in failing "to challenge the nature of the identification process that was employed by the use of a 'field show-up' as Petitioner wanted and believe that counsel had grounds to challenge it as it was tainted and over-suggestive, especially as there was an issue as to whether the witnesses were in a position to identify a suspect under the conditions on the day in question." (Pet., attached "Grounds for Relief" at (unnumbered) 4.)

At the hearing on Petitioner's first <u>Marsden</u> motion, one of Petitioner's complaints about counsel was that "I'm asking Mr. Van Oosting to file some motions to get this first degree burglary dismissed and he doesn't want to do it . . . ." (Ex. A at 22.) Part of counsel's response was:

> In this case, I think that he's asking for a motion to suppress the identification. Again, I don't see a legal basis to do that. I certainly see that there are problems with the identification. There are things that can be brought out in cross-examination. I don't see a basis to suppress it. I don't see a legal basis to suppress it. Hum, Mr. Brown is talking about specifically a statement that Mr. Cameron is one of the victims of the first degree burglary, a statement that he gave to the investigator that he knows that Mr. Brown is on parole, that is the basis to suppress the identification. What I've tried to explain is that No. 1, we cross-examined Mr. Cameron on that point during preliminary hearing. He states that the police didn't tell him that Mr. Brown was on parole prior to identification, and that it is not, that if Mr. Cameron

13

discovers that Mr. Brown is on parole subsequent to identification that my be unfortunate, but that is perfectly legal. There's nothing illegal about him finding out that Mr. Brown is on parole after the identification is made.

And so, I don't believe that there's a motion to suppress the identification based on that.

(Ex. A at 24-25.) Petitioner did not dispute counsel's characterization of the motion to suppress that Petitioner wanted him to file.

The grounds that Petitioner appears to raise here – that counsel should have moved to suppress the identification as unnecessarily suggestive – is not the ground that was discussed at the Marsden hearing. But to whatever extent Petitioner may be attempting to claim that counsel should have moved to suppress because <u>at the time he made the identification</u> Cameron knew Petitioner was on parole, there is no factual basis in the record for the claim.

As to the "unnecessarily suggestive" claim, it is true that Cameron identified Petitioner in a one-person field show-up, which undoubtedly is suggestive. Discussing the due process implications of unnecessarily suggestive identifications, the Supreme Court recently said:

> The Constitution, our decisions indicate, protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit. Constitutional safeguards available to defendants to counter the State's evidence include the Sixth Amendment rights to counsel, <u>Gideon v. Wainwright</u>, 372 U.S. 335, 343–345 (1963); compulsory process, <u>Taylor v. Illinois</u>, 484 U.S. 400, 408–409 (1988); and confrontation plus cross-examination of witnesses, <u>Delaware v. Fensterer</u>, 474 U.S. 15, 18–20 (1985) (per curiam). Apart from these guarantees, we have recognized, state and federal statutes and rules ordinarily govern the admissibility of evidence, and juries are assigned the task of determining the reliability of the evidence presented at trial. <u>See</u> <u>Kansas v. Ventris</u>, 556 U.S. 586, 594, n. * (2009) ("Our legal system ... is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses."). Only when evidence "is so extremely unfair that its admission violates fundamental conceptions of justice," <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990) (internal quotation marks omitted), have we imposed a constraint tied to the Due Process Clause. <u>See</u>, <u>e.g.</u>, <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959) (Due process prohibits the State's "knowin[g] use [of] false evidence," because such use violates "any concept of ordered liberty.").

<u>Perry v. New Hampshire</u>, 132 S. Ct. 716, 723 (2012).

The Court summarized its decisions thusly:

> Synthesizing previous decisions, we set forth in <u>Neil v. Biggers</u>, 409 U.S. 188 (1972), and reiterated in <u>Manson v. Brathwaite</u>, 432 U.S. 98 (1977), the approach appropriately used to determine whether the Due Process Clause requires suppression of an eyewitness identification tainted by police arrangement. The Court emphasized, first, that due process concerns arise only when law enforcement officers use an

14

**United States District Court**
For the Northern District of California

> identification procedure that is both suggestive and unnecessary. Id., at 107, 109; Biggers, 409 U.S., at 198. Even when the police use such a procedure, the Court next said, suppression of the resulting identification is not the inevitable consequence. Brathwaite, 432 U.S., at 112–113; Biggers, 409 U.S., at 198–199.
>
> A rule requiring automatic exclusion, the Court reasoned, would "g[o] too far," for it would "kee[p] evidence from the jury that is reliable and relevant," and "may result, on occasion, in the guilty going free." Brathwaite, 432 U.S., at 112; see id., at 113 (when an "identification is reliable despite an unnecessarily suggestive [police] identification procedure," automatic exclusion "is a Draconian sanction," one "that may frustrate rather than promote justice").
>
> Instead of mandating a per se exclusionary rule, the Court held that the Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a "substantial likelihood of misidentification." Biggers, 409 U.S., at 201; see Brathwaite, 432 U.S., at 116. "[R]eliability [of the eyewitness identification] is the linchpin" of that evaluation, the Court stated in Brathwaite. Id., at 114. Where the "indicators of [a witness'] ability to make an accurate identification" are "outweighed by the corrupting effect" of law enforcement suggestion, the identification should be suppressed. Id., at 114, 116. Otherwise, the evidence (if admissible in all other respects) should be submitted to the jury.[2]
>
> Applying this "totality of the circumstances" approach, id., at 110, the Court held in Biggers that law enforcement's use of an unnecessarily suggestive showup did not require suppression of the victim's identification of her assailant. 409 U.S., at 199–200. Notwithstanding the improper procedure, the victim's identification was reliable: She saw her assailant for a considerable period of time under adequate light, provided police with a detailed description of her attacker long before the showup, and had "no doubt" that the defendant was the person she had seen. Id. (internal quotation marks omitted). Similarly, the Court concluded in Brathwaite that police use of an unnecessarily suggestive photo array did not require exclusion of the resulting identification. 432 U.S., at 114–117. The witness, an undercover police officer, viewed the defendant in good light for several minutes, provided a thorough description of the suspect, and was certain of his identification. Id., at 115. Hence, the "indicators of [the witness'] ability to make an accurate identification [were] hardly outweighed by the corrupting effect of the challenged identification." Id., at 116.

Perry, 132 S. Ct. at 724-25 (footnote in original).

At trial, victim Cameron testified that he had a "good view" of Petitioner, in daylight, when Petitioner had left the house and was right below the window out of which Cameron was looking. (Ex. D at 251.) Cameron watched Petitioner walk to his car. (Id. at 253-56.) A police officer took Cameron to view a suspect; the officer told him that the person he was going to see might or might

---

[2] Among "factors to be considered" in evaluating a witness' "ability to make an accurate identification," the Court listed: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Manson v. Brathwaite, 432 U.S. 98, 114 (1977) (citing Neil v. Biggers, 409 U.S. 188, 199–200 (1972)).

not be the person who entered his house. (Id. at 258-59.) Cameron identified Petitioner. (Id. at 259.)

Petitioner's claim is that his counsel was ineffective in failing to move to suppress the show-up identification. Because no such motion was made and no hearing held, the only record as to the reliability of the identification is that set out above. On this record, a motion to suppress would not have been successful because the only evidence is that the identification was reliable. Trial counsel cannot have been ineffective for failing to raise a meritless motion. Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005). This claim is without merit.

### C. Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel was ineffective in failing to raise the ineffective assistance of trial counsel claims discussed above. As the claims lack merit, his appellate counsel's failure to raise them on appeal was neither deficient nor prejudicial under the Strickland standard. Consequently, petitioner did not receive ineffective assistance of counsel on appeal, and he is not entitled to habeas relief on this claim.

### D. Marsden Motions

Petitioner contends that the trial court violated his due process rights when it denied his motions for substitute counsel.

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas. See Schell v. Witek, 218 F.3d 1017, 1024 (9th Cir. 2000) (en banc). A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing. Wheat v. United States, 486 U.S. 153, 159 (1988). Nor is he entitled to an attorney he likes and with whom he feels comfortable. United States v. Schaff, 948 F.2d 501, 505 (9th Cir. 1991). The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel. Morris v. Slappy, 461 U.S. 1, 14 (1983). It is well settled that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction, as was done in this case. Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475-76 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir.

2000) (en banc). The ultimate inquiry is whether the petitioner's Sixth Amendment right to counsel was violated by the denial of the substitution motion. Schell, 218 F.3d at 1024-25. On habeas review, the court must determine whether the trial court's denial of the motion "actually violated [the petitioner's] constitutional rights in that the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Id. at 1026.

Here, Petitioner made three Marsden motions. The trial court held a hearing on each. (Ex. A, B, C.) Petitioner's claims at those hearings that counsel failed to file certain motions and failed to interview witnesses are discussed and rejected above. The only additional claim is that he and counsel were not getting along.

At the hearing on his first motion, as to this point Petitioner said only that "our communications isn't, isn't aligned." (Ex. A at 22.) Counsel responded that "it disappoints me that Mr. Brown thinks that there's a problem with the communication. I've certainly – I've been able to speak with him pretty extensively about the case." (Ex. A at 25.) Counsel said that he had arranged "several" video interviews with Petitioner and talked in court with him "several times." (Id.) They had also communicated by mail. (Id.)

At the hearing on the second motion, Petitioner's explanation of the conflict was, in its entirety but repeated twice, "we just don't see eye to eye." (Ex. B at 118.) At the hearing on the third motion, before sentencing, Petitioner did not discuss any problem communicating with counsel. (Ex. C.)

This record does not show a total lack of communication that resulted in ineffective representation. The claim is without merit.

## **CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Furthermore, no certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has failed to make a substantial showing that a reasonable jurist would find this Court's denial of his claims debatable or wrong. See

1  Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate
2  of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the
3  Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

4  The Clerk of the Court shall enter judgment and close the file.

5  IT IS SO ORDERED.

7  DATED: 6/20/12

*[signature]*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CHESTER BROWN,

        Plaintiff,

  v.

KATHY PROSPER et al,

        Defendant.

Case Number: CV09-04870 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 24, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Chester Brown P-38140
California Correctional Center
P.O. Box 2500
Susanville, CA 96127

Dated: July 24, 2012

Richard W. Wieking, Clerk
By: Lisa Clark, Deputy Clerk

19

**United States District Court**
For the Northern District of California

G:\PRO-SE\SBA\HC.09\Brown4870.deny-gaw.wpd